## CIRCUIT COURT OF FAIRFAX COUNTY

Marie Bushlow

v.

INOVA Health System Hospitals,
t/a Fairfax Hospital

Case No. (Law) 134255

Kevin Bushlow

v.

INOVA Health System Hospitals,
t/a Fairfax Hospital

Case No. (Law) 134256

February 23, 1996

BY JUDGE GERALD BRUCE LEE

This matter is before the Court upon the Defendant's, INOVA Health System Hospitals, Plea in Bar to the Plaintiffs' Motions for Judgment on the grounds of statutory immunity from suit. The issue presented is whether the Defendant (INOVA) is immune from claims arising out of requests for human organs for transplantation pursuant to Va. Code Ann. §§ 32.1-127 and 32.1-292.1. These cases were brought by Mr. Kevin Bushlow and Mrs. Marie Bushlow (Parents) against INOVA for negligence and intentional infliction of emotional distress stemming from the hospital's contacts with them during their daughter's fatal illness. In sum, each Motion for Judgment contends that the hospital was negligent in:

(1) Allowing its medical staff to question them about organ donation and soliciting their child's organs for human transplantation.

(2) Failing to obtain both parents' consent to organ donation;

(3) Unduly keep the child alive with artificial life preserving machines; and[1]

(4) Performing human organ compatibility matches on the child prior to the hospital securing consent to organ donation.

INOVA contends that the Parents' suits are barred by Va. Code Ann. § 32.1-127.1 which grants the chief administrative officer of a hospital or his designee immunity from suit for acts associated with routine contact with patients' families about organ donation. The Parents contend that the hospital is not immune from suit because the hospital's acts were unreasonable and overbearing and did not constitute "routine contact." Additionally, the Parents argue that the hospital's employees' persistent solicitations about organ donation were malicious and outrageous acts amounting to gross negligence which are not protected by the immunity statute. The Court after considering the testimony of the parties, their witnesses and the authorities, and arguments of counsel holds that INOVA's Plea in Bar is sustained and the Plaintiffs' Motions for Judgment will be dismissed.

## Facts

Crystal Ann Bushlow, age 16, was struck by a car as she walked home on August 13, 1992. She was rushed to Fairfax Hospital for emergency medical care. Crystal's injuries were severe. She required life support, including mechanical ventilation for gas exchange and pharmaceutical use of vasopressers to maintain adequate blood pressure and tissue perfusion of oxygen.

When the Parents arrived at the hospital, they were informed by the doctor of Crystal's grave injuries and poor prognosis. In the early morning hours of August 14, 1992, the hospital conducted a brain scan. The brain scan test results were consistent with brain death.[2] Around 9:00 a.m. on August 14, 1992, the Parents were "informed by doctors that [their] daughter was showing no brain activity." Kevin Bushlow MFJ at ¶ 3. The Parents informed the doctors not to keep Crystal alive by artificial means.

---

[1] The Court finds that there was no evidence offered at the evidentiary hearing to support the Parents' contentions in paragraphs three and four.

[2] The declaration of brain death requires the opinion of two physicians, at least one of whom must be a neurologist or neurosurgeon. Va. Code Ann. § 54.1-2972 (1992). In this case, the trauma surgeon made the initial determination of brain death at 9:00 a.m. The second opinion required was delivered to Mr. Bushlow at 2:50 p.m. on August 14, 1992, by Dr. Snyder, the neurologist.

Mr. Bushlow alleges that in his initial contact with Dr. Seneca, the trauma surgeon, he was informed about the brain scan test results. Mr. Bushlow reports that at that time, Dr. Seneca asked him whether the family had considered organ donation in the event that Crystal did not recover. Mr. Bushlow testified that he and his wife informed Dr. Seneca that the family did not believe in organ donation generally. Additionally, Mrs. Bushlow testified that she informed Dr. Seneca that her daughter had expressed her personal objection to organ donation. The Parents testified that they told Dr. Seneca they would not consider donating their daughter's organs.

Nurse Donna York, a registered nurse at Fairfax Hospital, testified that emergency medical personnel attended to Crystal upon her arrival and ascertained the child's condition. Nurse York and Dr. Seneca met with the Parents around 9:00 a.m. on August 14, 1992. Nurse York testified that Dr. Seneca reported the results of the brain flow study to the Parents. Nurse York said that Dr. Seneca mentioned the issue of organ donation in his report. Her recollection is that Dr. Seneca asked the parents, "Have you considered organ donation? Have you considered it at all? Or discussed organ donation in your family?" Dr. Seneca and Nurse York did not request consent for organ donation from the Parents. Nurse York testified that she and Dr. Snyder, the neurologist, met with Mr. Bushlow to inform him about the second opinion of brain death at approximately 2:00 p.m. in the afternoon of August 14, 1992. Mr. Bushlow's minister, Reverend John Macon, was present. Nurse York later met with Mr. Bushlow and introduced him to Ms. Angela Gilliam, a representative of the Washington Regional Transplant Consortium (WRTC). Ms. Gilliam explained organ donation to Mr. Bushlow. Mrs. Bushlow had left the hospital and was not present. Nurse York observed Mr. Bushlow confer with Reverend Macon who was also present. Mr. Bushlow questioned Ms. Gilliam about who would likely receive the organs and could the organs be of immediate benefit to anyone.

Mr. Bushlow was at the hospital all night. He testified that he was solicited at least three separate times by a nurse or a nurse and doctor prior to meeting with the WRTC representative. Mr. Bushlow testified that each time he declined to donate his daughter's organs. Mr. Bushlow testified that he was initially asked by the trauma surgeon, "Do you people believe in organ donation? Have you given any thought to organ donation?" Mr. Bushlow further testified that later, after midnight in the ER, he was asked by another doctor, "Have you given any further thought to organ donation?" This took place during a report on the child's condition by the

physicians. Mr. Bushlow stated that he reiterated to the doctor that his daughter is not an organ donor. Mr. Bushlow and his minister testified that mid-afternoon the next day, Mr. Bushlow met with a nurse who informed him of the results of the second brain flow study. Mr. Bushlow said that the nurse inquired, "Is Crystal going to be an organ donor?" Mr. Bushlow said, "I've been through this, she is not an organ donor. Who do I speak to about this?" The nurse then introduced Mr. Bushlow to Ms. Angela Gilliam from the WRTC.

Mr. Bushlow and Ms. Gilliam report that they met in the mid-afternoon. Mr. Bushlow was understandably distraught and troubled upon learning that Crystal had all but passed from life. Ms. Gilliam explained the process of organ and tissue donation to Mr. Bushlow in the presence of his minister. Mr. Bushlow says that he was under the impression that there was a child in the hospital who could use his daughter's heart. Mr. Bushlow conferred with his minister about the subject of organ donation prior to making a decision. Mr. Bushlow said that once he was informed that his daughter's heart could be used to save another child's life, he felt "compelled" to do what he could to save this child's life. He agreed to consent to the donation of Crystal's organs. Mr. Bushlow reviewed, modified, and signed the WRTC consent by next of kin for the donation of organs and tissues at 3:30 p.m. on August 14, 1992. Defendant's Exhibit 1. Mrs. Bushlow was not present and did not consent to the organ donation.

The Parents offered witnesses, including Mrs. Marie Bushlow, Mr. Kevin Bushlow, Reverend John Macon, and Ms. Georgia Horneber who testified generally to the above facts. Each of the Parents' witnesses testified that the Bushlows were approached about three times by either doctors or a nurse and a doctor and asked, "Have you considered organ donation?" or a question of like effect.

### Hospital Protocol Re Organ Donation Contact

INOVA argues that the Parents' suits are barred by Va. Code Ann. § 32.1-127.1. INOVA argues that the contacts complained of by the Parents are routine contacts required under hospital protocol compelled by law. Sections 32.1-127 and 32.1-292.1 of the Code of Virginia require every hospital to establish a routine contact protocol for inquiry of the families of suitable organ donors which offers them the opportunity to consider organ donation. Section 32.1-127 of the Code of Virginia requires in pertinent part that:

each hospital establish a routine contact protocol which ensures that the families of suitable organ and tissue donors are offered the opportunity . . . to consider organ, tissue, and eye donation.

Va. Code Ann. § 32.1-127 (1992). Additionally, INOVA cites Va. Code Ann. § 32.1-292.1 which provides in pertinent part:

Each licensed hospital shall establish an organ procurement for transplant protocol as required by regulations of the Board [of Health] adopted pursuant to § 32.1-127.

Va. Code Ann. § 32.1-292 (1992).

The Parents concede that the law requires the hospital to contact families of the gravely ill and to offer organ donation as an option. The Parents also acknowledge that physicians and nurses must have contact with the families of patients on an on-going basis to keep them informed about the patient's condition and to solicit direction from them about patient care. Va. Code Ann. § 32.1-127.1 (1992).

The Parents argue that the hospital personnel's persistent contacts deviate from the standard of care, were outrageous, and thus the conduct falls outside of the protection of Va. Code Ann. § 32.1-127.1. Marie Bushlow MFJ ¶¶ 7, 8, and 9, and Kevin Bushlow MFJ ¶¶ 3, 4, 7, 9, 10, and 14. The Motions for Judgment do not allege that the hospital employees' conduct was grossly negligent or that the employees acted with "bad faith" or "malicious intent."

The Court finds that medical personnel have an obligation to continually report to a patient's family about the patient's rapidly evolving medical condition. Medical reports concerning a patient's condition, prognosis, and family options are fully within the standard of care required of a hospital. The Fairfax Hospital physicians and nurses in this case informed the Parents about their child's grave condition. Additionally, under the protocol, the hospital personnel asked, "Have you considered organ donation?" There was no evidence that any of the hospital personnel solicited or sought the parents' consent to organ donation. Ms. Gilliam, the representative of WRTC designated in the protocol, made the actual request for consent to organ donation and obtained written consent from Mr. Bushlow.

Assuming arguendo, the Parents alleged that the above-described hospital doctor and nurse contacts were made in bad faith or with malicious intent, the evidence in this case simply does not support that weighty judgment. The Court finds that the hospital personnel here were not motivated by bad faith or malice. Rather, the Court finds that the nurses and

doctors were following the law and presenting a distraught parent with information.

The Court does not doubt that the pressures on the parent of a gravely ill child in a hospital setting are a heavy load to bear. Parents in this situation are confronted with a range of decisions and consents which must be carefully evaluated and then decided. In this case, Mr. Bushlow, after consultation with his minister, made a decision which the law allows.[3] The hospital personnel here acted within the sphere of the law, and accordingly, their actions are shielded from civil suit. Va. Code Ann. § 32.1-127.1 (1992). The Plea in Bar is sustained, and the Plaintiffs' lawsuits will be dismissed with prejudice.

---

[3] Mrs. Marie Bushlow's contention that both parents' consent was necessary or required is without merit. Section 32.1-290.1 of the Code of Virginia allows a parent to individually consent to organ donation without the joint consent of the other parent.